IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT BRYCE STEWART III, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UNILEVER UNITED STATES, INC. and CONOPCO, INC.,<br><br>Defendants. | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Robert Bryce Stewart III ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Unilever United States, Inc. and Conopco, Inc. d/b/a Unilever ("Defendants"). Plaintiff makes the following allegations based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

## INTRODUCTION

1. Defendants' self-proclaimed roots trace back to the 19th century with soap and margarine companies that pioneered new products and approaches. On its website, Defendants claim "[w]e're constantly developing our brands and products to keep pace with the changes in consumers' lives." In addition, Defendants claims that "[w]e aim to provide people the world over with products that are good for them and good for others."[1]

2. Consumers have become increasingly concerned about the effects of synthetic and chemical ingredients in food, cleaning products, bath and beauty products and everyday household products. Companies such as the Defendants have capitalized on consumers' desire for purportedly "natural products." Indeed, consumers are willing to pay, and have paid, a premium

---

[1] http://st.ives.com/ (last visited August 11, 2017).

1

for products branded "natural" over products that contain synthetic ingredients. In 2015, sales of natural products grew 9.5% to $180 billion.[2]

3. Among its several product lines, Defendants manufactures, distributes, and markets their St. Ives® brand, which promotes certain "natural" skin and body care products, which are sold in retail stores throughout the United States. Defendants manufacture, distribute, advertise and sells St. Ives® brand skin and body care products as "natural", including: (1) St. Ives® Collagen Elastin Body Lotion; (2) St. Ives® Coconut & Orchid Body Lotion; (3) St. Ives® Vitamin E & Avocado Body Lotion; (4) St. Ives® Cranberry & Grapeseed Oil Body Lotion; (5) St. Ives® Pear Nectar & Soy Body Lotion; (6) St. Ives® Cucumber Water & Melon Body Lotion; (7) St. Ives® Nourish & Soothe Oatmeal and Shea Butter Body Lotion; (8) St. Ives® Coconut Milk & Orchid Extract Body Lotion; (9) St. Ives® Vitamin E Body Lotion; (10) Natural Fruit AHA Complex Body Lotion; (11) Mineral Therapy Body Lotion; (12) Almond & Linseed Body Lotion; (13) St. Ives® Oatmeal and Shea Butter Body Wash; (14) St. Ives® Coconut & Orchid Body Wash; (15) St. Ives® Vanilla Body Wash; (16) St. Ives® Pink Lemon & Mandarin Orange Body Wash; and (17) St. Ives® Pear Nectar & Soy Body Wash, (18) St. Ives® Apricot Body Wash; and (19) Sea Salt & Kelp Body Wash (collectively, "Products").

4. Consistent with Defendants' self-promotion, until approximately the end of 2015, the front packaging of each one of the Products stated in prominent lettering either "100% Natural Moisturizers" "100% Natural Exfoliant" or "100% Natural Extracts." Defendants later changed the labeling so that the front packaging of each Product states in prominent lettering either "Made

---

[2] *Natural Products Industry Sales up 9.5% to $180bn Says NBJ,* FOOD NAVIGATOR, http://www.foodnavigator-usa.com/Markets/EXPO-WEST-trendspotting-organics-natural-claims/(page)/6; *see also* Shoshanna Delventhal, *Study Shows Surge in Demand for "Natural" Products,* INVESTOPEDIA (February 22, 2017), http://www.investopedia.com/articles/investing/ 022217/ study-shows-surge-demand-natural-products.asp (Study by Kline Research indicated that in 2016, the personal care market reached 9% growth in the U.S. and 8% in the U.K. The trend-driven natural and organic personal care industry is on track to be worth $25.1 million by 2025); *Natural living: The next frontier for growth? [NEXT Forecast 2017],* NEW HOPE NETWORK (December 20, 2016), http://www.newhope.com/beauty-and-lifestyle/natural-living-next-frontier-growth-next-forecast-2017.

with 100% Natural Moisturizers," "Made with 100% Natural Exfoliant" or "Made with 100% Natural Extracts."

5. Contrary to the labeling, however, every purportedly natural Product contains phenoxyethanol, dimethicone, sodium laureth sulfate[3], and/or methylisothiazolinone.[4] In April 2016, the Federal Trade Commission ("FTC") filed complaints against three cosmetics manufacturers for representing that their products were "natural" when they contained phenoxyethanol, dimethicone and/or other synthetic ingredients. All three companies agreed to cease marketing the products in question as being "natural."[5]

6. Plaintiff and members of the classes described below paid a premium for Defendants' Products over comparable products that did not purport to be natural products. Contrary to representations on the Products' labeling, instead of receiving natural products, consumers receive products with unnatural and/or synthetic ingredients.

7. Defendants' representation that the Products are "natural" is unfair, unlawful, and fraudulent conduct, is likely to deceive members of the public, and continues to this day. As such, Defendants' practices violate N.Y. G.B.L. §§ 349 & 350. Plaintiff also brings claims for fraud, unjust enrichment and breach of express warranty.

## JURISDICTION AND VENUE

8. This Court has personal jurisdiction over Defendants. Defendants purposefully avails itself of the New York consumer market and distributes the Products to hundreds of locations within this County and thousands of retail locations throughout New York, where the Products are purchased by thousands of consumers every day. Defendant, Conopco, Inc. is corporation formed in the state of New York. Defendants engage in business activities including manufacturing, labeling, packaging, engaging in corporate decisions, and working on regulatory

---

[3] https://whatsinproducts.com/files/brands_pdf/1391295214.pdf
[4] www.naturalnews.com/005342.html
[5] https://www.ftc.gov/news-events/press-releases/2016/04/four-companies-agree-stop-falsely-promoting-their-personal-care (last visited March 21, 2017).

3

approval of the Products that emanate out of the state of New York and impact consumers across the United States that purchased the Products.

9. This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), which, under the provisions of the Class Action Fairness Act ("CAFA"), explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a State different from any Defendants, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs. Plaintiff alleges that the total claims of individual members of the proposed Class (as defined herein) are well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs.

10. Venue is proper in this District under 28 U.S.C. § 1391(a). Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information regarding the nature, quality, and/or ingredients of the Products, occurred within this District, and the Defendant, Conopco, Inc. is incorporated in New York.

**PARTIES**

11. Plaintiff Robert Bryce Stewart III ("Stewart") is a citizen of New York, residing in Brooklyn.

12. Plaintiff Stewart regularly purchased St. Ives Body Lotion and Body Wash products at approximately the end of 2014 through mid-2017.

13. More specifically, at approximately the end of 2014 through mid-2017, Plaintiff Stewart purchased the St. Ives Oatmeal & Shea Body Moisturizers, Exfoliant, and Extracts approximately once every three to five months. As a result of his regular purchasing habits, Plaintiff Stewart purchased the aforementioned products both before and after the labeling change described in this complaint.

14. Between approximately the end of 2014 and mid-2017, Plaintiff Stewart purchased the aforementioned St. Ives Products from the following CVS and Duane Read stores in the Manhattan and Brooklyn, in the state of New York with labeling on the front packaging

that stated "100% Natural Moisturizers" "100% Natural Exfoliant," "100% Natural Extracts, " "Made with 100% Natural Moisturizers," "Made with 100% Natural Exfoliant" or "Made with 100% Natural Extracts":

   a. Duane Reade - 95 Wall St. New York, New York 10005
   b. Duane Reade -16th Court St., Brooklyn, New York 11241
   c. CVS - 150 Court St., Brooklyn, New York 11201
   d. CVS- 395 Court St., Brooklyn, New York 11231
   e. CVS – 65 5th Avenue, New York, New York 10003

15. Each time Plaintiff Stewart bought the St. Ives Body Lotion (Moisturizer) and Body Wash (Exfoliant and Extracts) products identified above, and at each Duane Reade and CVS store listed above, Robert Bryce Stewart III saw and read the front of the product packaging, and relied on the representations and warranties that the products were natural products (i.e., "100% Natural Moisturizers" "100% Natural Exfoliant" "100% Natural Extracts," "Made with 100% Natural Moisturizers," "Made with 100% Natural Exfoliant," and "Made with 100% Natural Extracts").  Mr. Robert Bryce Stewart III understood these representations to mean that St. Ives Moisturizer and Body Wash did not contain synthetic chemicals.  Plaintiff Stewart purchased St. Ives Body Lotion (Moisturizer) and Body Wash (Exfoliant, and Extract) at a substantial price premium, and would not have bought the product had he known that the labeling she relied on was false, misleading, deceptive and unfair.

16. Plaintiff Stewart would purchase the Products again in the future if Defendants changed the composition of the Products so that they conformed to their "natural" labeling and marketing.

17. Defendant Unilever Unites States, Inc. is a Delaware Corporation that has its principal place of business at 700 Sylvan Avenue, Englewood Cliffs, New Jersey 07632.

18. Defendant Conopco, Inc. d/b/a Unilever is a New York Corporation that has its principal place of business at 700 Sylvan Avenue, Englewood Cliffs, New Jersey 07632.

5

19. Defendants produce, market and distribute various consumer skin care and hygiene products in retail stores across the United States. Among others, those products include the Products listed hereinabove. Defendants knew that the labeling of the Products is false and misleading to a reasonable consumer, because the Products contain phenoxyethanol, dimethicone, sodium laureth sulfate, and/or methylisothiazolinone, which are inconsistent with the product labeling.

## FACTS COMMON TO ALL CAUSES OF ACTION

20. Consumers have become increasingly concerned about the effects of synthetics and chemical ingredients in cosmetic products. As a result, consumers are willing to pay, and have paid, a premium for products labeled "natural" over ordinary products that contain synthetic ingredients.

21. The FTC has warned marketers that the use of the term "natural" may be deceptive:

> Marketers that are using terms such as natural must ensure that they can substantiate whatever claims they are conveying to reasonable consumers. If reasonable consumers could interpret a natural claim as representing that a product contains no artificial ingredients, then the marketer must be able to substantiate that fact.[6]

22. Likewise, the Food and Drug Administration ("FDA") warns that any "natural" labeling on cosmetic products must be "truthful and not misleading."[7]

23. St. Ives® is a brand of skin care and hygiene products manufactured and marketed by Defendants and sold in retail, drug and grocery stores nationwide. On its website, Defendants tout that "[w]e're superfans of everything nature."[8]

24. St. Ives® Body Lotion has been made in twelve varieties during the class period, all of which contain phenoxyethanol and/or dimethicone: (1) St. Ives® Collagen Elastin Body Lotion; (2) St. Ives® Coconut & Orchid Body Lotion; (3) St. Ives® Vitamin E & Avocado Body

---

[6] 75 Fed. Reg. 63552, 63586 (Oct. 15, 2010).
[7] FDA, Small Business & Homemade Cosmetics: Fact Sheet, *available at* http://www.fda.gov/Cosmetics/ResourcesForYou/Industry/ucm388736.htm#7.
[8] http://st.ives.com/ (last visited August 11, 2017).

6

Lotion; (4) St. Ives® Cranberry & Grapeseed Oil Body Lotion; (5) St. Ives® Pear Nectar & Soy Body Lotion; (6) St. Ives® Cucumber Water & Melon Body Lotion; (7) St. Ives® Nourish & Soothe Oatmeal & Shea Butter Body Lotion; (8) St. Ives® Coconut Milk & Orchid Extract Body Lotion; and (9) St. Ives® Vitamin E (10) Natural Fruit AHA Complex, (11) Mineral Therapy, (12) Almond & Linseed.

25. St. Ives® Body Wash comes in seven varieties, all of which contain sodium laureth sulfate, and/or methylisothiazolinone: (1) St. Ives® Oatmeal and Shea Butter Body Wash; (2) St. Ives® Coconut & Orchid Body Wash; (3) St. Ives® Vanilla Body Wash; (4) St. Ives® Pink Lemon & Mandarin Orange Body Wash; (5) St. Ives® Pear Nectar & Soy Body Wash; (6) St. Ives® Apricot Body Wash; and (7) Sea Salt & Kelp Body Wash.

26. The front label of every St. Ives® Body Lotion and St. Ives® Body Wash package stated or states prominently in bold lettering the words "100% Natural Moisturizers" "100% Natural Exfoliant" "100% Natural Extracts," "Made with 100% Natural Moisturizers," "Made with 100% Natural Exfoliant," or "Made with 100% Natural Extracts." Examples are depicted below:

 

27. The St. Ives® Body Lotion and Body Wash Products have been labeled "natural," as alleged herein, at all times during the last four years, at least.

28. Based on the language that appears on the front of each product, Plaintiff reasonably believed that St. Ives® Body Lotion and St. Ives® Body Wash contained only natural ingredients.

29. The phrases "100% Natural Moisturizers" "100% Natural Exfoliant" "100% Natural Extracts" are representations to a reasonable consumer that St. Ives® Body Lotion and St. Ives® Body Wash contain only natural ingredients. The phrases are misleading to a reasonable

8

consumer because St. Ives® Body Lotion and St. Ives® Body Wash actually contain unnatural and synthetic ingredients.

30. In 2015, "natural" labeling litigation was in full swing with enforcement actions across the country against large companies for false or misleading representations. In or about the end of 2015, In an effort to continue to generate its robust sales, Defendant heightened the level of deceptiveness in its advertising practices to its consumers by changing its labeling to maintain the appearance that St. Ives® Body Lotion and Body Wash Products remained 'natural' products. Defendant changed the language on its front packaging of St. Ives® Body Lotion and Body Wash Products to read, "Made with 100% Natural Moisturizers," "Made with 100% Natural Exfoliant," or "Made with 100% Natural Extracts."

31. There are several reasons that the new "Made With" labeling at issue here has the capacity to deceive or confuse "a significant portion of the general public or of the targeted consumers[9].

32. First, according to Cambridge Dictionary the ordinary plain meaning of the term "moisturizer" is "a thick liquid put on the skin to make it soft and less dry,"[10] and dictionary.com defines "moisturizer to mean "a cream or lotion, used to restore moisture to the skin, especially the face and neck.[11] The same can be said with respect to the other terms used by Defendant in marketing its St. Ives® Body Lotion and Body Wash Products. For example, Merriam-Webster defines "exfoliant" as a chemical agent that is applied to the skin to remove dead cells from the surface.[12] In other words, the plain meanings of the terms "moisturizer," "exfoliant", and "extracts" are representative of the what is actually contained in the St. Ives Products -- either lotion to apply to the skin (moisturizer), or an agent to remove dead cells (exfoliant).

33. Similarly, the additional language "Made With" contained on Defendant's new labeling since the end of 2015 should be read as to its plain meaning when applying the

---

[9] *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496 (2003).
[10] https://dictionary.cambridge.org/us/dictionary/english/moisturizer (last visited April 8, 2019)
[11] https://www.dictionary.com/browse/moisturizer (last visited April 8, 2019)
[12] https://www.merriam-webster.com/dictionary/exfoliant (last visited April 8, 2019)

9

reasonable consumer standard. According to dictionaries, including Cambridge Dictionary, "Made With" is generally used to talk about the *ingredients in food and drink* and a cited example in the definition is "the dish is made with beef, red peppers, and herbs." In fact, in defining "Made With," the Cambridge Dictionary also identifies the difference between "Made With," "Made Of," "Made Out Of," and "Made From."

34. Applying the plain meaning of the language contained on the front packaging of Defendant's new (at the end of 2015) labeling, "Made With 100% Natural Moisturizers" has one meaning to the reasonable consumer, which is that the Products have "Ingredients Made With 100% Natural Lotion." Consumers purchase St. Ives® Body Lotion expecting that it will only contain lotion.

35. Defendant was aware that the impact of the new language would have on its consumers – to have them continue to believe that the St. Ives® Body Lotion and Body Wash Products contain 'natural' ingredients. The later-used labeling phrases "made with 100% Natural Moisturizers," "Made with 100% Natural Exfoliant," or "Made with 100% Natural Extracts" also are representations to a reasonable consumer that St. Ives® Body Lotion and St. Ives® Body Wash contain only natural ingredients.

36. Second, the labeling change adding the words "Made With" does not clarify that only some of the ingredients in the Products are natural and some or not, because "100% natural" is and has always been key to the St. Ives brand.

37. Third, package design plays a crucial role in consumer purchase decisions. Consumers take on average seven seconds to decide whether to buy a product. Effective product packaging therefore must quickly make an emotional and psychological impression on the consumer in the very small window of time that the consumer makes his or her purchase decision. Against that backdrop, consumer impressions of whether a product is "all natural" are commonly based on so-called "cues" of naturalness. One common technique marketers use to signal that a product is "all natural" is to emphasize the absence of certain chemical ingredients such as phthalates or parabens. Conversely, another common technique is to emphasize the

presence of natural ingredients without disclosing on the front label that the product is mostly synthetic. Such cues are commonly reinforced with leafy imagery, images of fruits or vegetables, and/or green text, as is the case here.

38. Defendant is aware of these widely-known marketing principles and knows that labeling phrases like "Made with 100% Natural Moisturizers," "Made with 100% Natural Exfoliant," or "Made with 100% Natural Extracts" are psychological cues that the entire product is a "natural" product. The plain language clearly communicates that the Products could contain only "natural" ingredients.[13] Defendant reinforces those cues with labeling images of mountains and leaves, and prominent references to natural ingredients like oatmeal and orchids. Although some consumers might construe a phrase like "Made with 100% Natural Moisturizers" to refer only to select ingredients in the products, a substantial number of reasonable consumers construe that phrase to mean the entire product is natural, particularly when viewed in the context of other cues of "naturalness" on the front labeling. That is why Defendant made the labeling change. As a result, the new "made with" labeling at issue here has the tendency or capacity to deceive or confuse a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances.

39. Defendants knew that consumers will pay more for a product labeled "natural," and intended to deceive Plaintiff and putative class members by labeling St. Ives® Body Moisturizer, Exfoliant, and Extracts, as purportedly natural products.

## CLASS ALLEGATIONS

40. Plaintiff seeks to represent a class defined as all persons in New York the United States who purchased the Products during the class period (the "Class"). Excluded from the Class are Defendants, its affiliates, employees, officers and directors, persons or entities that purchased the Products for resale, and the Judge(s) assigned to this case. Plaintiff reserves the

---

[13] In *Williams v. Gerber Products, Co.* 552 F.3d 934 (2009), the court noted that the statement that Fruit Juice Snacks was made with "fruit juice and other all natural ingredients" ***could*** mean that it was specifically made with the fruit represented on the packaging and could easily be interpreted by consumers as a claim that all the ingredients in the product were natural.

11

right amend the above class definition as appropriate after further investigation and discovery, including by seeking to certify a narrower multi-state class (or classes) in lieu of a nationwide class if appropriate.

41. Plaintiff seeks to represent a Subclass of all persons in New York who purchased the Products during the class period (the "New York Subclass"). Excluded from the New York Subclass are Defendant, its affiliates, employees, officers and directors, persons or entities that purchased the Products for resale, and the Judge(s) assigned to this case.

42. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the putative classes that predominate over questions that may affect individual Class members include, but are not limited to the following:

    a. whether Defendants misrepresented material facts concerning the Products on the label of every product;

    b. whether Defendants' conduct was unfair and/or deceptive;

    c. whether Defendants has been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for Defendants to retain the benefits conferred upon them by Plaintiff and the classes;

    d. whether Defendants breached express warranties to Plaintiff and the classes;

    e. whether Plaintiff and the classes have sustained damages with respect to the common-law claims asserted, and if so, the proper measure of their damages.

43. Plaintiff's claims are typical of those of other class members because Plaintiff, like all members of the classes, purchased Defendants' Products bearing the natural representations and Plaintiff sustained damages from Defendants' wrongful conduct.

44. Plaintiff will fairly and adequately protect the interests of the classes and have retained counsel that is experienced in litigating complex class actions. Plaintiff has no interests which conflict with those of the classes.

45. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

46. The prerequisites to maintaining a class action for equitable relief are met as Defendants has acted or refused to act on grounds generally applicable to the classes, thereby making appropriate equitable relief with respect to the classes as a whole.

47. The prosecution of separate actions by members of the classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants. For example, one court might enjoin Defendants from performing the challenged acts, whereas another might not. Additionally, individual actions could be dispositive of the interests of the classes even where certain Class members are not parties to such actions.

## COUNT I
## Breach of Express Warranty

48. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

49. Plaintiff brings this claim individually and on behalf of the proposed Class and New York Subclass against Defendants.

50. Defendants, as the designer, manufacturer, marketer, distributor, and/or seller, expressly warranted that the Products are "natural."

51. Defendants' express warranties, and its affirmations of fact and promises made to Plaintiff and the Class regarding the Products, became part of the basis of the bargain between Defendants and Plaintiff and the Class, thereby creating an express warranty that the Products would conform to those affirmations of fact, representations, promises, and descriptions.

52. The Products do not conform to the express warranty because they contain ingredients that are unnatural and synthetic.

53. As a direct and proximate cause of Defendants' breach of express warranty, Plaintiff and Class members have been injured and harmed because: (a) they would not have purchased the Products on the same terms if they knew the truth about the Products' unnatural

ingredients; (b) they paid a substantial price premium based on Defendants' express warranties; and (c) the Products do not have the characteristics, uses, or benefits as promised.

54. On June 12, 2018, Plaintiff Stewart mailed letters to Defendants consistent with Cal. Com. Code § 2607(3)(a) and U.C.C. 2-607(3)(A), and Defendants received those letters. The letters were sent on behalf of Robert Bryce Stewart III and all other persons similarly situated.

## COUNT II
### Unjust Enrichment

55. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

56. Plaintiff brings this claim individually and on behalf of the proposed Class and New York Subclass against Defendants.

57. Plaintiff and class members conferred benefits on Defendants by purchasing the Products.

58. Defendants has been unjustly enriched in retaining the revenues derived from Plaintiff' and class members' purchases of the Products. Retention of those monies under these circumstances is unjust and inequitable because of Defendants' misrepresentations about the Products, which caused injuries to Plaintiff and members of the classes because they would not have purchased the Products on the same terms if the true facts had been known.

59. Because Defendants' retention of the non-gratuitous benefits conferred on it by Plaintiff and Class members is unjust and inequitable, Defendants must pay restitution to Plaintiff and Class members for their unjust enrichment, as ordered by the Court.

## COUNT III
### Fraud

60. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

61. Plaintiff brings this claim individually and on behalf of the proposed Class and New York Subclass against Defendants.

62. As discussed above, Defendants provided Plaintiff and Class members with false or misleading material information about the Products by representing that they are "natural." Defendants made that misrepresentation knowing it was false.

63. Defendants' misrepresentations, upon which Plaintiff and class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and class members to purchase the Products.

64. Defendants' fraudulent actions harmed Plaintiff and class members, who are entitled to damages and other legal and equitable relief as a result.

## COUNT IV
### (Deceptive Acts Or Practices, New York Gen. Bus. Law § 349)

64. Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint. Plaintiff Stewart brings this claim individually and on behalf of the New York Subclass against Defendant. By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by misrepresenting that the Products are "natural," when, in fact, the Products contain synthetic and/or unnatural chemicals.

65. The foregoing deceptive acts and practices were directed at consumers.

66. The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics of the Products to induce consumers to purchase the same.

67. Plaintiff Mr. Stewart and New York Subclass members were injured as a direct and proximate result Defendant's violation because (a) they would not have purchased Defendant's Products had they known the products were not "natural" and in fact contained synthetic and/or unnatural chemicals, (b) they overpaid for the Products because they are sold at a price premium when compared to similar products that do not contain these misrepresentations, and (c) the Products did not have the characteristics, uses, or benefits as promised, namely that

they were "natural." As a result, Plaintiff Stewart and members of the New York Subclass have been damaged either in the full amount of the purchase price of the Product or in the difference in value between the Product as warranted and the Product as actually sold.

68. On behalf of himself and other members of the New York Subclass, Plaintiff Stewart seeks to enjoin the unlawful acts and practices described herein, to recover actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT V
### (False Advertising, New York Gen. Bus. Law § 350)

69. Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint.

70. Plaintiff Stewart brings this claim individually and on behalf of the members of the proposed New York Subclass.

71. Based on the foregoing, Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of the New York General Business Law by misrepresenting that the Products were "natural" when, in fact, they contained synthetic and/or unnatural chemicals.

72. The foregoing advertising was directed at consumers and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

73. This misrepresentation has resulted in consumer injury or harm to the public interest.

74. Plaintiff Stewart and New York Subclass members were injured as a direct and proximate result of Defendant's violation because (a) they would not have purchased Defendant's Products had they known the products were not "natural" and in fact contained synthetic and/or unnatural chemicals, (b) they overpaid for the Products because they are sold at a price premium when compared to similar products that do not contain these misrepresentations, and (c) the Products did not have the characteristics, uses, or benefits as promised, namely that

they were "natural." As a result, Plaintiff Stewart and members of the New York Subclass have been damaged either in the full amount of the purchase price of the Product or in the difference in value between the Product as warranted and the Product as actually sold.

75. On behalf of herself and other members of the New York Subclass, Plaintiff Stewart seeks to enjoin the unlawful acts and practices described herein, to recover actual damages or five hundred dollars per violation, whichever is greater, three times actual damages and reasonable attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment on behalf of herself and members of the Class and New York Subclass as follows:

A. For an order certifying the nationwide Class and New York Subclass under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiff as Class and Subclass representative; and naming Plaintiff's attorneys as Class Counsel representing the Class and Subclass members;

B. For an order finding in favor of Plaintiff, the nationwide Class, the New York Subclass, on all counts asserted herein;

C. For an order awarding statutory, compensatory, treble, and punitive damages in amounts to be determined by the Court and/or jury;

D. For injunctive relief enjoining the illegal acts detailed herein;

E. For prejudgment interest on all amounts awarded;

F. For an order of restitution and all other forms of equitable monetary relief;

G. For an order awarding Plaintiff her reasonable attorneys' fees and expenses and costs of suit.

## **JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all claims so triable.

Dated: October 24, 2019                Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:         */s/   Joshua D. Arisohn*
                Joshua D. Arisohn

Joshua D. Arisohn
Alec M. Leslie
888 Seventh Avenue
New York, New York 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9136
Email: jarisohn@bursor.com
            aleslie@bursor.com

**BURSOR & FISHER, P.A**
L. Timothy Fisher (CA Bar No. 191626)
Joel D. Smith (CA Bar No. 244902)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail:  ltfisher@bursor.com
            jsmith@bursor.com

**NATHAN & ASSOCIATES, APC**
Reuben D. Nathan (*pro hac vice forthcoming*)
2901 W. Coast Hwy., Suite 200
Newport Beach, California 92663
Telephone: (949)270-2798
E-Mail: rnathan@nathanlawpractice.com

*Attorneys for Plaintiff*